UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GARY LA BARBERA, THOMAS GESUALDI,      **MEMORANDUM & ORDER**
LOUIS BISIGNANO, ANTHONY PIROZZI,      08 CV 3095 (RJD) (JO)
FRANK FINKEL, JOSEPH FERRARA,
MARC HERBST, and THOMAS PIALI,
as Trustees and Fiduciaries of the Local 282
Welfare, Pension, Annuity, Job Training, and
Vacation and Sick Leave Trust Funds,

                    Plaintiffs,

      -against-

A. MORRISON TRUCKING, INC.,

                    Defendant.
-----------------------------------------------------------------X
DEARIE, Chief Judge.

      The trustees and fiduciaries ("Trustees") of the Teamsters Local 282 Welfare, Pension, Annuity, Job Training, and Vacation and Sick Leave Trust Funds ("Funds") bring this suit, pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), against A. Morrison Trucking, Inc. ("AMT") to collect delinquent contributions for the period August 1, 2001 through January 25, 2008. Pending before the Court is the Trustees' motion for summary judgment. The motion is granted in part and denied in part.

## BACKGROUND

      The following facts are not in dispute. The Funds are multiemployer benefits plans that were established pursuant to collective bargaining agreements ("CBAs") between Local 282 and various employers and are maintained for the purposes of collecting and receiving contributions and providing various benefits to eligible workers. AMT, a trucking company that hauls construction materials, has been a party to and bound by the CBAs from July 1, 1999 through

June 30, 2009.[1] Under the CBAs, AMT agreed to make contributions to the Funds for covered work performed by the drivers of its trucks.

AMT is also a party to a Restated Agreement and Declaration of Trust ("Trust Agreement"), the terms of which are expressly incorporated into the CBAs. The Trust Agreement requires AMT to submit contributions to the Funds for all pay periods ending within each calendar month within 45 days after the close of that month. See Trust Agreement, Art. IX § 1(b). AMT is also required to maintain and submit monthly written reports listing the individuals who performed covered work and the hours that they worked for each month (the "Remittance Reports"). Id. at § 1(c). Additionally, AMT is required to maintain pertinent books and records verifying the work hours reported on the Remittance Reports. Pertinent books and records include: (1) payroll records; (2) payroll tax records, including W-2 forms; (3) complete business income tax returns; (4) cash disbursement records; (5) general ledgers; (6) records relating to the hiring of trucks, including equipment vouchers, invoices and payment records; and (7) any other records requested by the Funds' auditors, including AMT's employee classifications and the amount of wages paid and hours worked. Id. at § 1(d). The Trustees may, from time to time, designate additional categories of documents as pertinent books and records without further notice to AMT. Id.

The Trust Agreement further provides that the Trustees may audit AMT's books and records "at any time" and AMT must submit any books and records requested by the Trustees within 20 days of any request. Id. Failure on AMT's part to do so is a material breach of the Trust Agreement and the Trustees are authorized to calculate delinquent contributions owed for

---

[1] From July 1, 1999 through June 30, 2006, AMT was a party to the New York City Heavy Construction & Excavation Contracts. From July 1, 2006 through June 30, 2009, AMT was a party to a Metropolitan Truckers' Association & Independent Trucker's Contract.

2

each month for which no pertinent books and records have been submitted by taking 50% of the hours that AMT reported on the Remittance Reports for that month and multiplying that figure by the contribution rates agreed to by the parties. Id. at § 1(f). The amount of delinquent contributions so computed shall be binding on AMT for the purposes of any legal proceeding. Id.

Beginning in 2007, the Trustees' auditors, Wagner & Zwerman LLP ("Auditors"), audited AMT's books and records covering the period August 1, 2001 through January 25, 2008. In May 2007, the Auditors made their first request for pertinent books and records, demanding that AMT provide "payroll records showing hours by employee broken down by week and month," "941 and NYS-45ATT quarterly payroll tax returns," "W-2s with W-3 attached," corporate or any other entity tax returns," and "general ledger and cash disbursements journal." AMT's attorney, Ambrose Woodson, responded to the Auditors' request, informing the Auditors that because the government had seized AMT's books and records for the period August 1, 2001 through December 31, 2003, AMT would not be able to provide them.[2] Because AMT failed to provide the requested pertinent books and records within 20 days of the Auditors' request, the Auditors applied the formula set forth in Section 1(f) of the Trust Agreement to calculate delinquent contributions. Based on that formula, the Auditors calculated that AMT owes $222,386.90 in delinquent contributions for the period August 1, 2001 through December 31, 2003.

AMT did provide the Auditors with the requested pertinent books and records for the period January 1, 2004 through January 25, 2008. In reviewing the books and records for the

---

[2] AMT does not dispute that Ambrose told the Auditors that the United States Department of Labor possessed the books and records that the Auditors requested. AMT contends, however, that Ambrose was misinformed and that he was unaware that AMT, as explained below, had already delivered the books and records to the Trustees' former auditors in 2003.

3

period, the Auditors determined that AMT underreported the number of hours that its drivers worked in its monthly Remittance Reports. Based on its review, the Auditors estimated that AMT owes $48,786.22 in delinquent contributions for the period January 1, 2004 through January 25, 2008.

Discovery is complete. The Trustees move for summary judgment seeking an award of $271,173.12 in delinquent contributions for the period August 1, 2001 through January 25, 2008.[3] AMT opposes summary judgment on three grounds. First, AMT argues that a genuine issue of fact exists as to whether its owner and president, Audley Morrison, previously provided its books and records for the period August 1, 2001 through December 31, 2003 to the Funds' auditors in 2003 such that its failure to provide them in response to the Auditors' request four years later in May 2007 does not constitute a material breach of the Trust Agreement. Second, AMT argues that because the Trustees did not file their complaint until July 29, 2008, the Trustees' claim for delinquent contributions accruing prior to July 29, 2002, is time-barred by New York's six-year statute of limitations. Finally, AMT argues that a genuine issue of fact exists as to whether the Auditors have overstated the amount of delinquent contributions owed for the period January 1, 2004 through January 25, 2008, because the Auditors have incorrectly assumed in calculating damages that all work performed by AMT's drivers was "covered work" for which AMT was obligated to contribute to the Funds.

## DISCUSSION

---

[3] The Trustees also seek, pursuant to the Trust Agreement and 29 U.S.C. § 1132(g)(2): (i) interest on delinquent contributions for the period August 1, 2001 to October 27, 2003 at a rate of 16% per annum, and interest on delinquent contributions for the period October 28, 2003 to January 25, 2008 at a rate of 1.5% per month; (ii) liquidated damages in an amount equal to the greater of (a) the amount of interest charged on the delinquent contributions or (b) 20% of delinquent contributions; (iii) reasonable attorneys' fees and costs incurred in collecting the delinquent contributions; and (iv) audit fees.

4

"The party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish her right to judgment as a matter of law." Gibbs-Alfano v. Burton, 281 F.3d 12, 18 (2d Cir. 2002) (internal citation omitted). "In determining whether a genuine issue of material fact exists, a court must resolve all ambiguities and draw all reasonable inferences against the moving party." Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). "Even when facts are disputed, in order to defeat summary judgment, the moving party must offer enough evidence to enable a reasonable jury to return a verdict in its favor." Byrnie v. Town of Cromwell, Bd. of Educ., 243 F.3d 93, 101 (2d Cir. 2001) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). However, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-28 (emphasis in original). Thus, the "non-moving party may not rely on conclusory allegations or unsubstantiated speculation" in seeking to avoid summary judgment. Byrnie, 243 F.3d at 101 (internal citation omitted).

### A. *AMT's Purported Delivery of its Books and Records to the Trustees' Former Auditors in 2003 Does Not Raise a Genuine Issue of Material Fact*

AMT concedes that it did not deliver the pertinent books and records for the period August 1, 2001 through December 31, 2003, within 20 days of the Auditors' request for the documents in May 2007. Nevertheless, AMT argues that summary judgment against it in the amount of $222,386.90 for delinquent contributions for that period must be denied because a reasonable juror could conclude that AMT's owner and president, Audley Morrison, had already provided the requested books and records to the Funds in 2003, and that AMT's failure to

comply with the Auditors' request four years later would therefore not constitute a material breach of the Trust Agreement. The Court does not agree.

In an affidavit filed in support of AMT's opposition papers, Morrison states that sometime in 2003, Adam Novick, one of the Funds' auditors at the time, contacted Morrison to let Morrison know that the Funds were conducting an audit of AMT and that Novick was having difficulty obtaining AMT's books and records from AMT's accountant, Alan Kaiser. After receiving Novick's call, Morrison instructed Kaiser to prepare the documents that Novick requested. According to Morrison, Kaiser prepared, among other things, "account receivables statements, accounts payable statements, time cards, receipts, and invoices for the period of August 1, 2001 to December 31, 2003." As soon as the documents were prepared, Morrison personally delivered the originals to Novick at Novick's office. When Morrison arrived, Novick told Morrison that the office copy machine was broken but that he (Novick) would make copies of the originals at a later date and return the originals to Kaiser. Kaiser died in June 2004. Shortly thereafter, Morrison went to Kaiser's office to search for AMT's documents. Kaiser's office was in "disarray" and Morrison was unable to locate the original documents that he left with Novick. Morrison "assumed that this meant that the Funds' auditors were still in the possession of the originals" and made no further effort to locate the documents.

Morrison's affidavit does not create a genuine issue of material fact. Assuming, as the Court must, that Morrison delivered books and records for the period August 1, 2001 to December 31, 2003 to Novick in 2003, Morrison's affidavit does not establish that he delivered the pertinent books and records that the Auditors requested four years later in May 2007. In response to Morrison's affidavit, the Trustees have submitted the affidavit of Ken Jones, an audit supervisor at Wagner and Zwerman. Jones affirms -- and AMT does not dispute -- that in May

2007 the Auditors requested AMT's "payroll records showing hours by employee broken down by week and month," "941 and NYS-45ATT quarterly payroll tax returns," "W-2s with W-3 attached," "corporate or any other entity tax returns," and "general ledger and cash disbursements journal." By contrast, Morrison's affidavit speaks only generally about the types of documents that he purportedly delivered to Novick four years earlier in 2003: that is, Morrison claims that he delivered "account receivables statements, accounts payable statements, time cards, receipts, and invoices." Aside from Morrison's affidavit, AMT offers no other evidence -- such as a receipt or correspondence -- that memorializes the specific documents that Morrison purportedly delivered to Novick in 2003. Accordingly, the Court concludes that AMT has not come forward with sufficient evidence from which a reasonable juror could conclude that AMT complied with its contractual obligations to provide the pertinent books and records requested by the Auditors.

Even assuming that a reasonable juror could conclude that Morrison delivered the requested pertinent books and records four years earlier, summary judgment for the Trustees would still be warranted. By signing the Trust Agreement, AMT agreed that it would deliver all pertinent books and records to the Trustees within 20 days of any such request and that its failure to do so would be a material breach of the agreement. Hand-in-hand with AMT's obligation to submit books and records on demand is its obligation to maintain them in a manner that ensures AMT's ability to comply with its obligation. Not only is AMT contractually bound but ERISA also expressly places the duty on employers to keep records of their employees' hours for at least six years to accurately determine the amount of contributions that employers owe to employee benefit plans. See La Barbera v. J.D. Collyer Equipment Corp., 337 F.3d 132, 136-37 (2d Cir. 2003) (citing 29 U.S.C. § 1059(a)(1) ("every employer shall . . . maintain records with respect to

each of his employees sufficient to determine the benefits due or which may become due to such employees"); 29 U.S.C. § 1027 (records must be "available for examination for a period of not less than six years"); see also Demolition Workers Union v. Mackroyce Contracting Corp., 2000 WL 297244, at *7 (S.D.N.Y. Mar. 22, 2000) (quoting Combs v. King, 764 F.2d 818, 823 (11th Cir. 1985) (noting that ERISA "was enacted, at least in part, to increase the information and data available to participants," and "employers were to play integral roles in the disclosure process")). Indeed, it is precisely because "the employer is in the best position to know the number of hours worked, courts have determined that the policies of ERISA are advanced by the imposition of a burden that reflects the employer's duties under ERISA." Id. (citation omitted). That burden required AMT to make copies of its original books and records or take other steps to maintain them before handing them over to the Auditors and no amount of dissembling or excuse will release it from its obligation. See Accord Roca v. Guardian Transport Co., Inc., 2002 WL 31082959, at *6 (S.D.N.Y. Sept. 16, 2002) (rejecting employer's argument that its submission of books and records to bankruptcy court satisfied its obligation to furnish the books and records to trustees on demand); La Barbera v. Ovan Construction, 06-CV-2867, Docket Entry 28 at *12 (E.D.N.Y. Mar. 31, 2010) (unpublished opinion) (rejecting employer's argument that it was exempt from complying with its obligation to provide books and records upon auditors' demand because its accountant refused to release the records).

*B. The Trustees' Claims for Delinquent Contributions Accruing Prior to July 29, 2002, Are Timely*

8

AMT next argues that because the Trustees did not file their complaint against AMT until July 29, 2008, the Trustees' claims for delinquent contributions for the time period preceding July 29, 2002, must be dismissed as time-barred. The gist of AMT's argument is that because it submitted monthly Remittance Reports to the Funds from August 2001 through January 2008, and because, as discussed above, Morrison delivered AMT's books and records for the period August 1, 2001 through December 31, 2003, to Novick in 2003, the Trustees' "access to [these documents] provided them with the tools to file their complaint for unpaid contributions as soon as they came due." The Court is not persuaded.

AMT, as the party seeking to establish a statute of limitations defense, bears the burden of establishing by prima facie proof that the limitations period has run. See La Barbera v. R. Rio Trucking, 2007 WL 2177063, at *4 (E.D.N.Y. July 27, 2007) (citing Overall v. Estate of Klotz, 52 F.3d 398, 403 (2d Cir. 1995)). AMT cannot "carry [this] burden merely by pointing to the absence of evidence supporting the non-moving parties' claim or position but must come forward with affirmative evidence showing the absence of a triable issue of fact regarding the validity of the defense." Id. (citing Levy v. Aaron Faber, Inc., 148 F.R.D. 114, 119 n.1 (S.D.N.Y. 1993) (internal quotation marks omitted). ERISA does not provide a limitations period for civil enforcement actions brought pursuant to 29 U.S.C. § 1132. See id., at *3 (citing Miles v. N.Y. State Teamsters Conference Pension & Retirement Fund Employee Pension Benefit Plan, 698 F.2d 593, 598 (2d Cir. 1983)). Thus, courts must look to "the most nearly analogous state limitations statute." Id. (quoting Miles, 698 F.2d at 598, citing Board of Regents v. Tomanio, 446 U.S. 478, 483-84 (1980)). Because employee benefit plans are contracts, New York's six-year period of limitations for contract actions, see N.Y. C.P.L.R. § 213(2), applies, id. (citing Miles, 698 F.2d at 598).

Although the Court must look to New York law to provide the relevant statute of limitations period, federal law governs when the statute of limitations begins to run on a claim for delinquent contributions under ERISA. Id. (citing Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007)). Under federal law, a claim for delinquent contribution accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." Id. (citing Guilbert, 480 F.3d at 149). The "crucial question" here is whether the Funds had "sufficient notice of probable discrepancies in the employer's contribution reports that the concept of due diligence required them to investigate long before they did." Michigan United Food and Commercial Workers Unions and Drug and Mercantile Employees Joint Health and Welfare Fund v. Muir Co. Inc., 992 F.2d 594, 597-98 (6th Cir. 1993); see also Hanley v. Aperitivo Restaurant Corp., 1998 WL 307376, at *8 (S.D.N.Y. June 11, 1998) ("[T]he key issue in determining when the Funds 'had reason to know' of the inaccuracies is not whether the Funds could have audited the restaurant's books at an earlier time, but rather whether they should have done so. . . . This question, in turn, hinges on when the Funds had 'reason to awaken inquiry' about irregularities in Aperitivo's contributions sufficient to prompt the Funds, in the exercise of due diligence, to conduct an audit.") (internal citation omitted).

AMT offers no reason why the monthly Remittance Reports that it prepared and delivered to the Funds should have alerted the Trustees to irregularities in AMT's contributions to the Funds. In fact, AMT contends just the opposite throughout its opposition papers, insisting that it has always kept "adequate books and records," and has "consistently kept and provided fund remittance reports for all years to date." Accordingly, AMT's argument that its monthly Remittance Reports put the Funds on inquiry notice is rejected. Accord Hanley, 1998 WL 307376, at *8 (rejecting employer's argument that "because the Funds knew that (they) had the

right audit its books upon demand, they could have learned of the inaccurate contributions at the time they were submitted").

AMT's argument that Morrison's delivery of books and records to Novick renders time-barred the Trustees' claim for delinquent contributions that accrued before July 29, 2002, is also rejected. Even assuming that the books and records that Morrison delivered to Novick contained sufficient information to place the Funds on inquiry notice that AMT had underreported its employees' hours in its monthly Remittance Reports, Morrison admits that he did not deliver the books and records to Novick until sometime in 2003 and the filing of the Trustees' complaint five years later in July 2008 was therefore timely.

### C. *A Bench Trial is Warranted to Determine the Amount of Delinquent Contributions Owed for the Period January 1, 2004 Through January 25, 2008*

AMT concedes that the Auditors uncovered that AMT underreported the number of hours worked by some of its employees in the monthly Remittance Reports that it submitted for the period January 1, 2004 through January 25, 2008. AMT argues, however, that summary judgment against it in the amount of $48,786.22 -- the Auditors' estimate of the amount of delinquent contributions that AMT owes the Funds for the period -- is not warranted because in calculating damages the Auditors have incorrectly assumed that all of the work performed by AMT's drivers was "covered work" for which AMT was obligated to contribute to the Funds. Indeed, Morrison states that he "occasionally paid drivers and subcontractors to perform work that was not covered under the CBA with Local 282, such as transporting materials off of job sites" and that "[o]ne subcontractor, Jennison's All Haul, which is the subject of Audit No. 4, did not perform any covered work, and as such, no contributions were made on behalf of this subcontractor."

Despite the Court's sense that AMT will have very little to else to add to the record than what it has already offered, the Court concludes that in light of the Second Circuit's recent summary order in Reilly v. Reem Contracting Corp., 2010 WL 2202947, 380 Fed App'x 16 (2d Cir. June 2, 2010), the more prudent approach is to hold a short bench trial at which AMT can contest the amount of damages. Accord New York District Council of Carpenters Pension Fund v. KW Construction, Inc., 2010 WL 3958799, at *5 (S.D.N.Y. Sept. 2, 2010) (citing Reilly and noting "inquiries into the reasonableness of the Funds' audits or the adequacy of the defendants' employee records are properly left for trial and the proper question in deciding the Fund's motion for summary judgment is whether defendant has submitted evidence that raises a factual dispute as to the amount of damages owing the Fund") (internal citation omitted). At trial, the Court will adopt the burden-shifting standard announced in Combs v. King, 764 F.2d 818, 823 (11th Cir. 1985).

## CONCLUSION

The Trustees' motion for summary judgment is granted in part and denied in part. AMT is ordered to pay delinquent contributions in the amount of $222,386.90 for the period August 1, 2001 through December 31, 2003. A bench trial will be held on April 11, 2011, at 10 AM to determine the amount of delinquent contributions owed for the period January 1, 2004 through January 25, 2008. Calculation of total damages, including interest, liquidated damages and attorneys' fees, will be determined after trial.

SO ORDERED.

Dated: Brooklyn, New York
      February /7, 2011        s/ Judge Raymond J. Dearie

                                                               RAYMOND J. DEARIE
                                                               United States District Judge